UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-22613-MGC-Cooke

MERWIN LARREAL,

      Plaintiff,

VS.

TELEMUNDO OF FLORIDA, LLC,

      Defendant.

_____/

### DEFENDANT'S MOTION FOR RULE 11 SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 11, Defendant Telemundo of Florida, LLC ("Defendant" or "Telemundo") hereby serves this motion and incorporated memorandum of law upon Plaintiff Merwin Larreal ("Plaintiff"). The Motion will not be filed with the Court if the Plaintiff's economic damages claim is withdrawn within twenty-one days of service. In support of this Motion, Defendant states as follows:

### BACKGROUND AND PROCEDURAL POSTURE

Plaintiff is an undocumented individual who unlawfully procured employment in the United States and now wants Telemundo to compensate him for future lost wages through work he was not legally entitled to perform. He claims a Telemundo news report caused him to lose the unauthorized work, which he procured, at least in part, by fraudulently presenting himself as someone else. He likewise claims he lost that work, despite clear evidence that the news report did not cause him to lose *any* work and that his unspecific, unreported, untaxed cash deposits actually *increased* after the report.[1]

The report truthfully reported Plaintiff's arrest during a drug raid at the strip club complex where he works. On or about April 20, 2018, various law enforcement agencies, including the Miami Dade Police Department, the Drug Enforcement Agency, and the Bureau of Alcohol, Tobacco and Firearms, conducted a raid of two local adult entertainment

---

[1] *See* Deposition of Merwin Alexander Larreal Garcia, June 12, 2020 ("Plaintiff's Dep.") at Exhibits 27 – 30.

EXHIBIT 1

clubs, The Booby Trap and LaBare, in connection with a narcotics investigation ("the Raid"). During the Raid, law enforcement arrested several individuals, including Plaintiff. Based on information obtained from the Miami Dade Police Department, Telemundo aired a news report on April 23, 2018 accurately identifying the individuals that had been arrested during the Raid, including Plaintiff ("the News Report"). The News Report is the subject of this lawsuit.

Nearly a year after the News Report was published, on or about April 18, 2019, Plaintiff filed a Complaint in state court alleging a single defamation per se claim. (D.E. 1). The action was thereafter removed to federal court on June 24, 2019. *Id*. In the Complaint, Plaintiff takes issue with Telemundo's truthful reporting of his arrest and claims the News Report implied he was arrested for the sale of drugs. *Id*. at ¶ 12. As a result, Plaintiff alleges he "lost his employment" and has been damaged. *Id*. at ¶¶ 13, 20, 21.

Plaintiff continued to pursue damages related to allegedly lost employment throughout this case in his discovery responses, his Rule 26 disclosures, and (just days ago) in his deposition:

- In Plaintiff's supplemental answers to Telemundo's First Set of Interrogatories, he explains that he seeks recovery for his alleged "demot[ion]" at LaBare and alleged lost work as an extra for Univision and Telemundo. *See* Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories ("Suppl. Rog. Resp."), No. 15 at p. 3, attached hereto as Exhibit A.[2]

- In filing his Fourth Amended Rule 26 Initial Disclosures, Plaintiff indicated his "economic damages relate[] to [his] loss of work as an extra and as a stagehand for Telemundo and Univision," as well as loss of weekly compensation at an unspecified employer for "three to four weeks" following the News Report. (D.E. 53 at p. 5). His prior disclosures had similarly claimed economic damages related to lost work. (D.E. 37 at p. 3) (indicating Plaintiff seeks economic damages and referring to supplemental

---

[2] Although Defendant did not know it at the time Plaintiff's interrogatory response was served, Plaintiff's claim of economic damages in his interrogatory responses also violates Federal Rule of Civil Procedure 26(g)(1)(B)(i), which requires that the attorney serving the response certify that the response is "warranted by existing law."

  interrogatory answers); (D.E. 41 at p. 4) (describing "economic damages related to his loss of work as an extra and as a stage hand" and additional reduced compensation for unspecified work); (D.E. 42 at p. 4-5) (same).

- Plaintiff similarly testified at length to these purported economic losses during his deposition on June 12, 2020. *See* Plaintiff's Dep. at *passim*.[3]

Notably, Plaintiff also testified during his deposition that he is undocumented and has remained undocumented continuously since his temporary visa expired in August 2016. *Id.* at p. 16, l. 12 – p. 19, l.22; p. 21, ll. 11 - 14.

Plaintiff, an undocumented worker, is not entitled to seek economic damages for lost future employment under clearly established law. Plaintiff's claims for economic damages should be stricken from his Complaint, and his counsel should be directed to pay to Telemundo its attorneys' fees and costs in defending against Plaintiff's economic damages claims as a sanction for violating Federal Rule of Civil Procedure 11.

## ARGUMENT

### I. Rule 11 Standard.

Rule 11 sanctions are proper when a party or an attorney files a pleading that "(1) is not well-grounded in fact, *i.e.*, has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1294 (11th Cir. 2002); *Mike Ousley Prods, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992) ("Rule 11 stresses the need for some prefiling inquiry."). When assessing a party's conduct under Rule 11, this Court may use an objective standard and examine the reasonableness of the conduct under the circumstances, including what was reasonable to believe at the time the pleading was submitted. *Riccard*, 307 F.3d at 1294; *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, No. 8:03-cv-2671, 2006 WL 4792784, at *2 (M.D. Fla. Sept. 14, 2006). In making this determination, a two-step inquiry is required: "(1) whether the party's claims are

---

[3] Plaintiff was scheduled to be deposed March 10, 2020, but his deposition was reset multiple times thereafter at the insistence of his counsel. His deposition ended up being conducted on June 12, 2020 – the discovery cutoff – for reasons outside of Defendant's control.

EXHIBIT 1

objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.; Rowe v. Gary*, 773 F. App'x 500, 503 (11th Cir. 2019). "The obligations imposed by Rule 11 also continue throughout the course of the litigation and sanctions can be imposed when a litigant continues to press a claim after learning that it ceases to have merit." *Meyrowitz v. Brendel*, No. 16-81793, 2018 WL 6308709, at *8 (S.D. Fla. Aug. 28, 2018) (citing Fed. R. 11, advisory committee's notes).

Plaintiff's claim for economic damages is barred under clearly established law. *See* Fed. R. Civ. P. 11(b)(2). Plaintiff's continued pursuit of economic damages falls below the standards required to satisfy Rule 11, and Plaintiff's counsel should have been aware that this claim was frivolous at the time he filed this action. As a result, should Plaintiff refuse to withdraw his claims for economic damages within 21 days after service of this motion, Plaintiff and his counsel should be sanctioned. In the event this motion is filed, Telemundo requests that this Court strike Plaintiff's claims and direct Plaintiff's counsel to pay to Telemundo its reasonable attorney's fees and other expenses resulting from Plaintiff's pursuit of these claims. Fed. R. Civ. P. 11(c)(4), (5); *McDonald v. Emory Healthcare Eye Ctr.*, 391 Fed. Appx 851 (11th Cir. 2010) (affirming district court's dismissal of complaint as Rule 11 sanction); *Universal Commc'n Sys., Inc. v. Turner Broad. Sys., Inc.*, No. 05-20047, 2006 WL 950037, at *1 n.1 (S.D. Fla. Feb. 10, 2006) (determining amount of attorneys' fees to be awarded in connection with Rule 11 motion previously granted); *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1386 (N.D. Ga. July 8, 2013) (striking claim and awarding attorney's fees and costs in connection with Rule 11 motion).

II. *Plaintiff's Economic Damages Claim Lacks a Legal Basis.*

Under Rule 11(b)(2), the allegations of a claim must be "warranted by existing law" or by a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Due to his status as an undocumented worker, Plaintiff is not entitled to recover economic damages in this action under clearly established existing law. There exists no nonfrivolous argument for any alteration of that law. Thus, Plaintiff failed to meet the standard of Rule 11 in pleading economic damages in his complaint in this case at the time he filed this action, and his continued pursuit of such damages through the present violates the Rule. *See, e.g.* Plaintiff's Dep. at p. 115, ll. 5-9, p. 116, l. 6 – p. 117, l. 15, p. 119, l. 19 – 21; p. 202, l. 4 – p. 204, l. 22; p. 207, ll. 3- 7. (conducted June 12, 2020)

EXHIBIT 1

(testifying that he seeks in this action economic losses due to lost work); Plaintiff Merwin Larreal's Fourth Amended Rule 26 Initial Disclosures (dated June 10, 2020) (D.E. 53) at p. 5, § C (claiming Plaintiff is "asserting economic damages" for "lost work" and referring to Plaintiff's December 19, 2019 supplemental answers in interrogatories); Supp. Rog. Resp., No. 15, at p. 3 (dated Dec. 19, 2019) (attached hereto as Ex. A) (also claiming loss of income from work); Compl. (dated April 18, 2019) (D.E. 1) at ¶¶ 13,20, 21) (claiming Plaintiff "lost his employment").

### A. Undocumented workers are not entitled to recover lost future earnings from work.

In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA") which, among other things, prohibits "the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002); *see also* 8 U.S.C. § 1324a. Unauthorized persons who violate the IRCA by using or attempting to use "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States are subject to fines and/or criminal prosecution. *See* 8 U.S.C. §1324c(a); 18 U.S.C. § 1546(b).

Pursuant to these laws, the United States Supreme Court has refused to award lost wages to undocumented workers for unperformed work. *Hoffman*, 535 U.S. at 151. In *Hoffman*, the National Labor Relations Board sought to award backpay to an undocumented worker who had never been authorized to work in the United States, as a result of the employer's violation of the National Labor Relations Act. *Id*. at 140-141. At a hearing before an Administrative Law Judge ("ALJ") to determine the amount of backpay to be paid, the undocumented worker admitted to using a birth certificate to obtain work and fraudulently obtain a driver's license and social security card. *Id*. at 141-42. Based on this testimony, the ALJ determined the Board was precluded from awarding the undocumented worker backpay or reinstatement based on the IRCA and the Board disagreed. *Id*. at 141. The Supreme Court agreed with the ALJ's decision, finding awarding backpay to an undocumented worker "for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in first instance by a criminal fraud…runs counter to policies underlying IRCA" and "would unduly trench upon explicit statutory prohibitions…trivialize[] the immigration laws, [and] condone[] and encourage[] future violations." *Id*. at 147-150. That is, the

undocumented worker was "never lawfully entitled to be present or employed in the United States, and thus…ha[d] no right to claim backpay." *Id*. at 146.

The Middle District of Florida has interpreted *Hoffman* to similarly preclude an award of lost wages where the undocumented worker unlawfully subverted immigration laws, including by tendering fraudulent identification in connection with that employment. *See Veliz v. Rental Service Corp. USA*, Inc., 313 F. Supp. 2d 1317, 1335-36 (M.D. Fla. 2003). In *Veliz*, the personal representative of the estate of an undocumented worker who was killed in a forklift accident brought a products liability suit against the manufacturer and lessor of the forklift. *Id*. at 1319. The court granted the defendants' summary judgment motion finding, amongst other things, that the plaintiff could not recover lost wages because the decedent was ineligible for employment in the United States. *Id*. at 1334-35. In fact, the plaintiff did not dispute the worker "was an undocumented alien unauthorized to work in the United States." *Id*. at 1336. Following *Hoffman*, the court found an award under these circumstances "would be tantamount to violating the IRCA." *Id*. at 1336 ("if this Court were an employer, it would be compelled to discharge [the undocumented worker]. Otherwise, it would face civil fines and criminal prosecution for knowingly compensating an undocumented alien in exchange for work."); *see also Hernandez-Cortez v. Hernandez*, No. 01-1241-JTM, 2003 WL 22519678, at *7 (D. Kan. Nov. 4, 2003) (plaintiff's status as undocumented precluded recovery of lost income based on projected earnings in the United States). *Compare with Rakip v. Paradise Awnings Corp.*, No. 2010 WL 11469123, at *1 (Cooke, J.) (interpreting *Hoffman* as barring award of pay to undocumented worker for unperformed work but not precluding recovery for past labor). Accordingly, courts are clearly precluded from awarding lost future earnings to an undocumented worker.[4]

> **B. Plaintiff was undocumented at the time he performed the work at issue in this lawsuit and remains undocumented today.**

Plaintiff is admittedly an undocumented individual not lawfully in the United States. Plaintiff's Dep. at p. 16, l. 12 – p. 19, l.22; p. 21, ll. 11 - 14. He has never had a work visa, and

---

[4] Plaintiff's purported economic damages are likewise highly speculative and lack any appropriate level of factual support. Fed. R. Civ. P. 11(b)(3); Plaintiff's Dep. at p. 201, l. 16 – p. 202, l. 3; p. 206, l. 1 – p. 207, l. 7 (testifying Plaintiff never received or filed and tax documents in connection with his income and that the only records pertaining to that income are bank records reflecting unspecified cash deposits).

thus has never been authorized to be employed in the United States. *Id.*; *see also* p. 191, ll. 7 – 11; 8 U.S.C. §1324a; 8 U.S.C. § 1324c; 18 U.S.C. § 1546; 18 U.S.C. § 1015(e). He has been undocumented since August 2016, when he overstayed a temporary tourist visa, and has unlawfully remained in the United States since that time without any authorization. *Id.* He has never reported any income from his employment in the United States to the IRS, paid any taxes on those wages, or filed an income tax return. *Id.* at p. 201, l. 16 – p. 202, l. 3.

In this action, Plaintiff seeks compensation for lost wages in connection with his work at LaBare, Univision and Telemundo. But Plaintiff unlawfully earned these wages in violation of 8 U.S.C. § 1324a, § 1324c, 18 U.S.C. §1546 and 18 U.S.C. § 1015(e). That is, Plaintiff subverted immigration laws by procuring work he could not have lawfully obtained at LaBare, Univision, and Telemundo. In the case of Telemundo, he secured that employment by fraud; namely, by tendering fraudulent identification and assuming a false identity to obtain employment through Telemundo. Plaintiff's Dep. p. 178, ll. 17 – 19; p. 180, l. 14 – p. 182, l. 14; p. 186, ll. 10-12 (admitting he presented false identification to secure access to the Telemundo premises and signed into work under a false identity), Ex. 44 (depicting sign-in sheet Plaintiff admits to signing under a fake name), Ex. 34, p. 57 (depicting false identification used by Plaintiff to secure Telemundo employment); *See also* Deposition of Diego A. Rincon (hereinafter "Rincon Dep."), at p. 30, ll. 8 - 17 (testifying Plaintiff worked for Mr. Rincon's agencies without a work permit and thus used "the name of another person, instead of his name," to procure the work); p. 121, l. 19 – p. 125, ll. 6 (testifying that Plaintiff used the name and identification of Alexis Acosta to secure extra work), Ex. 4, p. 57 (depicting false identification used by Plaintiff).

Plaintiff was obviously aware of his undocumented status when he filed this lawsuit, and his counsel knew or should have known this fact prior to filing this lawsuit and that the law would thus preclude any recovery for future economic damages. Instead, despite a clear lack of authority in the law, Plaintiff and his counsel continue to pursue a claim for economic damages. Under these circumstances, the Court should impose sanctions under Rule 11.

    **III.**    *Because Plaintiff Has Refused to Withdraw or Correct His Baseless Claim, The Court Should Impose Rule 11 Sanctions.*

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th

EXHIBIT 1

Cir. 2010) (quoting 2 James W. Moore, et al., *Moore's Federal Practice* § 11.03 (3d ed. 2010)). Rule 11(c)(2) provides that a party moving for Rule 11 sanctions must: (a) first identify in its motion the specific conduct that violates Rule 11(b); (b) serve the motion on the opposing party but not file it; and (c) give the opposing party 21 days to withdraw or correct the challenged contention. As of the time of filing this motion, Telemundo has complied with these requirements, and therefore sanctions should be awarded.

As set forth above, Telemundo has identified with specificity the allegations contained in Plaintiff's Complaint and other filings in this Court that are without evidentiary and legal support. As of the time of filing this motion with the Court, if filed, more than 21 days have passed since Telemundo served this motion on Plaintiff, but Plaintiff has failed to withdraw his economic damages claim. Accordingly, the Court should sanction Plaintiff and his counsel. *See* Fed. R. Civ. P. 11(c)(4) and (c)(5)(A). An appropriate sanction in this case would be to strike the frivolous claim and require Plaintiff's counsel to pay to Telemundo its attorneys' fees and costs associated with defending the action, including but not limited to preparing and filing this motion. In the event the Court determines that Telemundo is entitled to recover its fees and costs, Telemundo will file with the Court evidence necessary to establish the amount of such fees and costs.

## CONCLUSION

For the foregoing reasons, Telemundo respectfully requests that this Court grant this motion, sanction Plaintiff and his counsel in striking Plaintiff's claim for economic damages and ordering Plaintiff's counsel to pay to Telemundo its fees and costs in defending Plaintiff's claims, and grant such other relief as the Court deems proper.

## LOCAL RULE 7.1 CERTIFICATE

Counsel for Defendant has served this motion in accordance with Rules 11(c)(2) and 5 of the Federal Rules of Civil Procedure on the date indicated in the Certificate of Service but has not filed this motion. Prior to filing the motion, Defendant will confer in good faith with counsel for Plaintiff in an effort to resolve the issues raised herein and will update this certificate at the time of filing this motion.

Dated: June 16, 2020

Respectfully Submitted,

**EXHIBIT 1**

SHULLMAN FUGATE PLLC

**Deanna K. Shullman**
Deanna K. Shullman (Florida Bar No. 514462)
dshullman@shullmanfugate.com
Giselle M. Girones (Florida Bar No. 124373)
ggirones@shullmanfugate.com
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 429-3619

Lynn D. Carrillo (Florida Bar No. 364990)
Lynn.carrillo@nbcuni.com
NBCUniversal News Group
NBCUniversal/Telemundo Enterprises
One Telemundo Way
Miami, FL 33182
Tel: (786) 585-7142

*Attorneys for Defendant*
*Telemundo of Florida, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy for the foregoing has been served, but not filed, by **email and U.S. mail** on this 16th day of June, 2020 on all counsel of record on the service list.

**Deanna K. Shullman**
Deanna K. Shullman, Esq.

## SERVICE LIST

Gustavo D. Lage, Esq.
Augusto R. Lopez, Esq,
Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado, LLP
201 Alhambra Circle, Suite 1205
Coral Gables, Florida 33134
Telephone: (305) 377-1000
glage@smgqlaw.com
alopez@smgqlaw.com
*Attorneys for Plaintiff*

9

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-cv-22613-MGC-Cooke

MERWIN LARREAL,

    Plaintiff,

v.

TELEMUNDO OF FLORIDA, LLC,

    Defendant.
_____/

## PLAINTIFF, MERWIN LARREAL'S SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES NOS. 7, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, AND 23

COMES NOW, Plaintiff, MERWIN LARREAL ("Plaintiff"), by and through undersigned counsel, hereby gives notice of serving Answers to Defendant's First Set of Interrogatories. (the "Interrogatories"), as follows:

**Interrogatory No. 7:**
Do you believe Telemundo intended each implication identified in your response to Interrogatory No. 4? As to each statement for which the answer is "yes," please identify all facts that support, contradict, refute or are in any way related to your contention that Telemundo intended the implication.

**Answer: Yes. My belief is based on the fact that Defendant could have disclosed that my arrest was the result of a bench warrant for a traffic violation and holy unrelated to the Raid in any and all ways, but chose not to do so. I am unaware of any facts that refute this contention, and I reserve the right to further supplement this answer as discovery is ongoing and additional facts and evidence may become available to me as result of the discovery process.**

**Interrogatory No. 12:**
Have you heard or do you know about any statement or remark made by anyone about the News Report? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

**EXHIBIT 1**

**Answer: Numerous employees of The Booby Trap and La Bare and were overheard discussing the News Report and Raid for weeks after the Raid, including the individuals listed below, as well as friends who work at Univision and my agent, and the item was the subject of various Instagram posts and blogs, and the News Report is one of the first item that appears when you run a Google search on me. I reserve the right to further supplement this answer as discovery is ongoing and additional facts and evidence may become available to me as result of the discovery process.**

> **La Bare employees: Alex (Manager), Gino (Manager), Jacob (stage name), Carlos (stage name), Jeremiah (stage name), Billy (bartender), Alma (clerk), Johnny (stage name), Keanu (stage name), and Jorge (waiter)**
> **Booby Trap employees: various employees that I cannot identify by name that I would run into in the kitchen shared with La Bare who would tell me they saw the News Report**
> **Republica Deportiva (Univision TV show): Andy Lopez, Gustavo Villalobos, Jeffrey, Blogs**
> **Talent agency: Diego Rincon**

**Interrogatory No. 13:**
Identify all lawsuits, investigations or other proceedings, whether criminal, civil, administrative, or otherwise, that you have participated as a party, non-party, intervenor, witness or any other role in the last ten years, and include the case number and court in which the case was brought or name of entity conducting the investigation.

**Answer: None, other than traffic infractions, including the one that was the subject of the violation for driving without a license, that led to the bench warrant for which I am producing documents.**

**Interrogatory No. 14:**
Describe in detail your time as Comisionado del Gobernador de Mérida para la Diversidad Sexual, Género y VIH, including the circumstances which gave rise to you being placed in that role, your responsibilities during your term, and the circumstances surrounding your exit from that role, including any allegations, lawsuits, and/or investigations regarding your term.

**Answer: In 2014, I was nominated/appointed by Marcos Diaz Orellana, Governor of Merida, Venezuela, as part of a movement towards greater tolerance for gender and sexual diversity. I was re-appointed by the next governor, Alexis Marquez. However, as political and economic conditions deteriorated in my country, I was forced to abandon the post and flee Venezuela in 2016.**

**Interrogatory No. 15:**
Describe in detail the nature and extent of each item of injury, loss, or damage you attribute to Telemundo, describe with particularity all evidence you have to demonstrate or prove those damages, identify all documents describing or otherwise relating to those damages, and identify in your answer all persons with knowledge of those damages.

EXHIBIT 1

**Answer:** After the News Report aired, I was attacked, maligned, and mocked relentlessly on all social networks primarily Instagram. Prior to the Raid, I was working at La Bare as a bartender, but after the Raid and because of the Raid, I was demoted to attendant to the talent (backstage), because they said I could no longer work with the public because the public did not want to be waited on by a drug dealer and there had been complaints (the clients did not want me to serve them because they said I was a drug dealer). My income dropped from $1,000/week as a bartender and that dropped to about $300/week as a backstage assistant. I was also blacklisted or dropped by my talent agent due to the Raid, and could no longer get work for Univision where I earned $120 (net) every Sunday as crowd manager. I was also blacklisted or dropped from consideration for the modeling and extra work I used to engage in regularly for Telemundo and Univision telenovelas, earning about $300-400/week. I reserve the right to further supplement this answer as discovery is ongoing and additional facts and evidence may become available to me as result of the discovery process.

**Interrogatory No. 16:**
Describe all facts that support the amount of damages you claim in this case and the method used to compute that amount.

**Answer:** See answers to No. 1, 2, 3, 11, 12, and 15. Some of the damages cannot be calculated as the present a jury question. I reserve the right to further supplement this answer as discovery is ongoing and additional facts and evidence may become available to me as result of the discovery process.

**Interrogatory No. 17:**
Describe in detail all facts that support or refute your contention that you "lost [your] employment" as a result of Telemundo's conduct, and include all facts related to the amount of those damages, identify all documents describing or otherwise relating to those damages, the method you used to compute the amount, and provide the names, addresses, and telephone numbers of any persons with knowledge of those damages.

**Answer:** See answers to Nos. 15 and 16.

**Interrogatory No. 18:**
Describe in detail all facts that support your contention that you have been "held out to scorn and public ridicule within [the community in which you reside and work]" as a result of Telemundo's conduct, and identify in your answer all persons who have subjected you to such scorn and ridicule, as well as any persons with knowledge of these facts.

**Answer:** See answers to No. 1, 2, 3, 11, 12, 15, and 16. I reserve the right to further supplement this answer as discovery is ongoing and additional facts and evidence may become available to me as result of the discovery process.

**EXHIBIT 1**

By: _____
Merwin Larreal

STATE OF FLORIDA        )
                        )
COUNTY OF MIAMI-DADE    )

BEFORE ME, the undersigned authority, personally appeared Merwin Larreal, who, is personally known to me or has produced Bolivian Passport as identification, and after taking an oath, deposes and says that he answered the foregoing Interrogatories and that the answers are true and correct.

SWORN TO and subscribed before me this 19th day of December, 2019.

NOTARY PUBLIC, State of Florida

Sign: _____

Print: _____

My Commission Expires:

ZAIDA P. HERNANDEZ
MY COMMISSION # GG 362255
EXPIRES: August 22, 2023
Bonded Thru Notary Public Underwriters

(SEAL)

8

**EXHIBIT 1**